# Exhibit 1

MULTIPARTY AGREEMENT

THIS MULTIPARTY AGREEMENT (the "**Agreement**"), made as of this 3rd day of July, 2023 (the "**Effective Date**") by and among Shared Investments IV, LLC, a Delaware limited liability company, as successor-in-interest to Becker-Bartlesville, L.L.C., a Michigan limited liability company (the "**Landlord**"), Springs Global US, Inc., a Delaware corporation, as successor-in-interest to Springs Basic Bedding, LLC, a Delaware limited liability company (the "**Tenant**"), and Keeco, LLC, a California limited liability company (the "**Subtenant**").

W I T N E S S E T H:

A.  Landlord and Tenant entered into that certain lease dated as of September 24, 2002 (such lease, as amended and supplemented to the date hereof, is hereinafter referred to as the "**Lease**") pertaining to certain premises (the "**Premises**") located at the building commonly known as located at 1560 Industrial Boulevard, Bartlesville, Oklahoma 74006-6035 (the "**Building**"), which Premises were demised to Tenant pursuant to the Lease; and

B.  Tenant and Subtenant entered into that certain sublease dated as of March 15, 2019 (such sublease, as amended and supplemented to the date hereof, is hereinafter referred to as the "**Sublease**") pertaining to the Premises, which Premises were demised to Subtenant pursuant to the Sublease;

C.  Landlord, Tenant and Subtenant now desire that (i) Tenant and Subtenant vacate the Premises, (ii) the Sublease be terminated; (iii) Tenant's interest in the Lease be assigned to Landlord's designee, and the Premises and the Improvements surrendered to Landlord on and as of the Surrender Date (all such terms as hereinafter defined);

D.  Landlord has agreed to waive certain obligations of Tenant under the Lease and Subtenant under the Sublease, and to accept the Premises and release the Subtenant and Tenant from any and all future obligations under the Lease and Sublease on the Surrender Date upon the terms and subject to the conditions set forth in this Agreement,

NOW, THEREFORE, in consideration of the mutual covenants herein contained and for other good and valuable consideration, Landlord, Tenant and Subtenant agree as follows:

1. <u>Surrender</u>.

(a) *Surrender Date.*   In this Agreement, the term "**Surrender Date**" means 5:00 p.m. on July 31, 2023. Notwithstanding anything to the contrary contained in the Lease, on the Surrender Date Tenant shall surrender to Landlord possession of the Premises and the Improvements (as defined in in Section 2 below) vacant and broom clean, with the intent and purpose that the Term of the Lease with respect to the Premises and the Improvements shall be forever extinguished as of the

Surrender Date in the same manner and with the same effect as if the Surrender Date was the date set forth in the Lease for the expiration of the Term. TIME SHALL BE OF THE ESSENCE FOR THE TENANT TO VACATE AND SURRENDER THE PREMISES TO LANDLORD ON OR BEFORE THE SURRENDER DATE. Tenant will be liable for all losses and damages suffered or incurred by Landlord as a result of Tenant's failure to vacate and surrender the Premises to Landlord by the Surrender Date.

(b) *Prorations.* All fixed rent and additional rent payable under the Lease shall be pro-rated as of the Surrender Date; and any fixed rent or additional rent paid by Tenant with respect to any period following the Surrender Date shall be returned to Tenant within five (5) business days of the Surrender Date in accordance with and subject to the terms of this Agreement. Provided the Tenant is not then in default under the Lease beyond notice and applicable cure periods, the letter of credit presently held by Landlord as the Security Deposit shall be returned to Tenant within five (5) business days of the Surrender Date, and Landlord shall sign all instruments necessary to cancel the letter of credit security deposit upon the presentation of the necessary documents by Tenant. Tenant presently holds Subtenant's security deposit under the Sublease ("**Subtenant's letter of credit**").

(c) *Surrender Payments.* In consideration of Landlord's agreement to accept Tenant's surrender of the Premises on the Surrender Date, Tenant shall cancel Subtenant's letter of credit and release to Subtenant all funds securing Subtenant's letter of credit no later than July 15, 2023, on the condition that Subtenant pay to Landlord a one-time payment equal to the sum of One Hundred Twenty Four Thousand Dollars ($124,000) on or before the Surrender Date. Concurrently with this payment, (i) Subtenant shall have no further letter of credit obligations under the Sublease, and (ii) the Sublease shall terminate with no further obligation by Subtenant to Tenant under the Sublease. In addition, Subtenant shall pay to Landlord One Million Five Hundred Thousand Dollars ($1,500,000), payable in twelve (12) equal payments in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000), delivered to Landlord on or before the first calendar day of each month following the Surrender Date, (collectively the "**Surrender Payments**"). Such Surrender Payments shall be made by wire transfer to an account designated by Landlord or by a bank check payable to Landlord.

(d) *Reimbursement Obligations.* Tenant and Subtenant acknowledge and agree that as of the Surrender Date the Premises are not in compliance with the surrender conditions set forth in the Lease, and in consideration of Landlord's agreement to accept Tenant's surrender of the Premises on the Surrender Date, Subtenant shall reimburse Landlord for costs and expenses paid as a result of Landlord's performance of certain maintenance and repairs to the Building (collectively, "**Building Maintenance**"), payable in part concurrently with the execution and delivery of this Agreement, up to Five Hundred Fifty Thousand Dollars ($550,000) and as follows (i) a one-time payment to Landlord equal to the sum of Two Hundred Fifty Thousand Dollars ($250,000) (the "**Initial Maintenance Payment**") on the Effective Date; and (ii) in the event that the costs and expenses paid by Landlord in relation to performing the Building Maintenance exceed the amount of the Initial Maintenance Payment, then within ten (10) days

following Subtenant's receipt of written notice from Landlord to Subtenant, which notice shall include reasonable documentation evidencing costs paid by Landlord related to the performance of the Building Maintenance (a "**Maintenance Invoice**"), Subtenant shall reimburse Landlord in an amount equal to the sum set forth in the Maintenance Invoice ("**Ongoing Maintenance Payments**"). Notwithstanding the foregoing, Subtenant's obligation to reimburse Ongoing Maintenance Payments shall be limited to the cumulative amount of Three Hundred Thousand Dollars ($300,000) so that Subtenant's obligation under this Section 2(d) with respect to the Initial Maintenance Payment and the Ongoing Maintenance Payments shall not exceed Five Hundred Fifty Thousand Dollars ($550,000).

(e)   *Failure to Make Payments.* In the event that Subtenant fails to make any payments as required hereunder, and such failure continues for five (5) days of its due date hereunder, then, in addition to its right to exercise any and all rights and remedies afforded Landlord at law or equity, Subtenant shall pay to Landlord on demand a sum equal to $500,000 (herein the "**Stipulated Damages**"). The parties hereto acknowledge and agree that because of the unique nature of this Agreement and the expense involved by Landlord in accepting the surrender of the Premises and the performance of the Building Maintenance, it is difficult or impossible to determine with precision the amount of damages that would be or might be incurred by Landlord as a result of Tenant or Subtenant's failure to make any payments as required hereunder and that: (i) Landlord shall be damaged by the failure of Tenant or Subtenant to meet such obligations; (ii) it would be impracticable or extremely difficult to fix the actual damages resulting therefrom; (iii) the Stipulated Damages payable under this section are not a penalty, and are fair and reasonable; and (iv) such Stipulated Damages represent a reasonable estimate of fair compensation for the losses that may reasonably be anticipated from such failure.

(f)   *Assignment of Lease.* Concurrently with the execution of this Agreement, Tenant, Landlord, and Landlord's designee, Shared Investments II LLC ("**Landlord's Designee**") shall execute an Assignment of Lease in the form attached hereto as **Exhibit A**, and Landlord expressly consents to such Assignment of Lease.

2.   No Encumbrances.  Tenant and Subtenant each represents and warrants on behalf of itself and its successors and assigns, that it has not done or suffered (and Tenant and Subtenant agree that it will not do or suffer) anything whereby the Lease or the Premises or any fixture, alteration, decoration, installation and improvement in and to the Premises (including, without limitation any supplemental HVAC units presently located in the Premises), whether made, installed or paid for by Landlord or Tenant (collectively, the "**Improvements**") has become encumbered in any way whatsoever and that no one other than Tenant or Subtenant has any right, title, and/or interest in or to the Premises, the Lease, the Sublease or the Improvements. Tenant and Subtenant represent that the Premises have not been sublet or underlet, except pursuant to the Sublease; and that there are no parties in possession or occupancy of the Premises other than Tenant and Subtenant.

3.    <u>Release of Landlord</u>.  On and as of the Surrender Date Tenant and Subtenant shall release Landlord, all Affiliates (as said term is hereinafter defined) of Landlord, and its and their successors and assigns, from and against any and all claims, obligations and liabilities of every kind or nature whatsoever arising out of or in connection with the Lease, the Premises, the Improvements or any matter relating to the foregoing other than: (a) claims arising out of the performance of the terms of this Agreement; and (b) claims arising under the Lease which by their terms expressly survive the expiration or termination of the Lease.

4.    <u>Acceptance of Surrender by Landlord; Release of Subtenant and Tenant</u>. Provided Tenant is not then in breach of any of the terms and conditions of this Agreement, and provided further that Subtenant or Tenant pays the Surrender Payment and the Initial Maintenance Payment to the Landlord on the Surrender Date, Landlord shall on and as of the Surrender Date accept Tenant's and Subtenant's surrender of the Premises and the Improvements and, subject to the <u>Section 1(e)</u> above, release Tenant and Subtenant, and each of them, and all Affiliates of Tenant and Subtenant respectively, and their respective successors and assigns, from and against any and all claims, obligations and liabilities of every kind or nature whatsoever arising out of or in connection with the Lease, the Sublease, the Premises, the Improvements and any matter relating to the foregoing other than: (a) claims arising out of the performance of the terms of this Agreement, including the payments required under <u>Section 1</u>; and (b) any claims arising under the Lease and Sublease (including third-party indemnification claims) which by their terms expressly survive the expiration or termination of the Lease or Sublease.

5.    <u>Broker</u>. Landlord, Subtenant and Tenant each represents and warrants to that it has had no dealings or negotiations with any broker, finder or like agent in connection with this Agreement or any other matter relating thereto. Tenant and Subtenant each covenants and agrees to hold harmless and indemnify Landlord and any Affiliate of Landlord from and against any and all claims, demands, damages, costs, liabilities and expenses (including reasonable attorneys' fees, charges and disbursements) in connection with any: (a) claims, actions or demands by any broker, finder or like agent with respect to the negotiation, execution or delivery of this Agreement or the surrender of the Premises if such broker, finder or like agent shall claim to have dealt with Tenant or Subtenant; or (b) arising from Tenant's or Subtenant's breach or alleged breach by the Tenant or Subtenant, respectively, of its representations contained in this Section.

6.    <u>Indemnification</u>.  Tenant shall indemnify Landlord and any Landlord Affiliate and Subtenant and any Subtenant Affiliate against any and all claims, demands, damages, costs, liabilities, and expenses (including reasonable attorneys' fees, charges and disbursements) paid or incurred by Landlord or Subtenant as the case may be in connection with any breach of this Agreement by Tenant.  Subtenant shall indemnify Landlord and any Landlord Affiliate and Tenant and any Tenant Affiliate against any and all claims, demands, damages, costs, liabilities, and expenses (including reasonable attorneys' fees, charges and disbursements) paid or incurred by Landlord or Tenant as the case may be in connection with any breach of this Agreement by Subtenant.  Landlord

shall indemnify Subtenant and Tenant and their respective Affiliates against any and all claims, demands, damages, costs, liabilities, and expenses (including reasonable attorneys' fees, charges and disbursements) paid or incurred by Subtenant and Tenant, and each of them, and their respective Affiliates in connection with any breach of this Agreement by Landlord.

7. <u>Miscellaneous</u>.  (a) This Agreement contains the entire agreement of the parties hereto and supersedes any previous or contemporaneous negotiations and agreements.  There have been no representations made by the parties or understandings made between the parties other than those set forth in this Agreement.  This Agreement may not be modified except by a written instrument duly executed by the parties hereto.

(b) If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

(c) This Agreement shall be governed and construed in accordance with the internal laws of the State of Oklahoma.

(d) The terms, covenants and conditions contained herein shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Any reference in this Agreement to "**Affiliate(s)**" shall mean all partners, members, shareholders, directors, officers, employees and agents of Landlord, Subtenant, or Tenant, as the context may require, whether the same are natural or legal persons.

(e) This Agreement may be signed in counterparts and shall be considered a complete instrument when all parties have affixed their signatures. The execution of this Agreement by facsimile or other electronic form (*e.g.* PDF) of signature shall be binding and enforceable as an original; provided that any party delivering a facsimile or electronic document shall execute and deliver to the other party an original instrument, as soon as reasonably possible thereafter. This Agreement may not be modified, altered or amended except by a separate written instrument executed by all parties hereto.

[signature page follows]

**IN WITNESS WHEREOF**, Landlord and Tenant and Subtenant have duly entered into and executed this Agreement by and through their respective authorized representatives as of the Effective Date.

**LANDLORD:**

**Shared Investments IV LLC,** a Delaware limited liability company

By: *Dennis M. Breen* ✓✓✓
Dennis M. Breen, III, Principal

**TENANT:**

**Springs Global US, Inc.,** a Delaware corporation

By:_____
Delbridge E. Narron
SVP & General Counsel

**SUBTENANT:**

**Keeco, LLC,** a California limited liability company

By:_____
Kevin F. Lawrence
Chief Information Officer

**IN WITNESS WHEREOF**, Landlord and Tenant and Subtenant have duly entered into and executed this Agreement by and through their respective authorized representatives as of the Effective Date.

**LANDLORD:**

**Shared Investments IV LLC,** a Delaware limited liability company

By:_____
Dennis M. Breen, III, Principal

**TENANT:**

**Springs Global US, Inc.,** a Delaware corporation

By:_____
Delbridge E. Narron
SVP & General Counsel

**SUBTENANT:**

**Keeco, LLC,** a California limited liability company

By:_____
Kevin F. Lawrence
Chief Information Officer

**IN WITNESS WHEREOF,** Landlord and Tenant and Subtenant have duly entered into and executed this Agreement by and through their respective authorized representatives as of the Effective Date.

**LANDLORD:**

**Shared Investments IV LLC,** a Delaware limited liability company

By:_____
    Dennis M. Breen, III, Principal

**TENANT:**

**Springs Global US, Inc.,** a Delaware corporation

By:_____
    Delbridge E. Narron
    SVP & General Counsel

**SUBTENANT:**

**Keeco, LLC,** a California limited liability company

By: *Kevin F. Lawrence* (DocuSigned)      7/3/2023
    Kevin F. Lawrence
    Chief Information Officer

# EXHIBIT A

### Form of Assignment and Assumption of Lease

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "**Assignment Agreement**") is made and entered into as of the 30th day of June 2023, by and between **Springs Global US, Inc.**, a Delaware corporation ("**Assignor**"), **Shared Investments II LLC**, a Delaware limited liability company ("**Assignee**"), and **Shared Investments IV LLC**, a Delaware limited liability company ("**Landlord**").

### WITNESSETH:

    A.    Pursuant to that certain Multiparty Agreement ("**Multiparty Agreement**") by and among Assignor, (defined therein as Tenant), Shared Investments IV LLC (defined therein as Landlord) and, Keeco, LLC (defined therein as Subtenant) Assignor is to assign to Assignee all of Assignor's right, title and interest in and to that certain Lease Agreement dated as of September 24, 2022 by and between Shared Investments IV LLC, as landlord, and Assignor, as Tenant (such Lease Agreement, as amended and supplemented to the date hereof, is hereinafter referred to as the "**Lease**") for the premises located at 1560 Industrial Boulevard, Bartlesville, Oklahoma 74006-6035 (the "**Premises**"), to Assignee, and Assignee is to assume all of Assignor's future liabilities and obligations under the Lease.

    B.    The parties hereto desire to provide for the assignment of such right, title and interest and the assumption of such liabilities and obligations in accordance with the terms of hereof.

NOW, THEREFORE, in consideration of the foregoing and in order to effectuate the above-referenced assignment and assumption, the parties hereto hereby agree as follows:

    1.    <u>Assignment</u>. Assignor does hereby convey, transfer, assign and deliver unto Assignee, effective as of the date hereof, all of its right, title and interest in and to the Lease.

    2.    <u>Assumption</u>. Assignee hereby assumes and agrees to satisfy and perform the liabilities and obligations of Assignor arising under the Lease to the extent such liabilities and obligations first arise or are incurred or are first required to be performed on or after the date hereof.

    3.    <u>Release</u>. Landlord consents to the assignment and assumption effected by this Assignment Agreement. Landlord further agrees that as of the date hereof Assignor is released from all liabilities and obligations of Tenant (as defined in the Lease) arising under the Lease to the extent such liabilities and obligations first arise or are incurred or are first required to be performed on or after the date hereof.

4. <u>Governing Law</u>. This Assignment Agreement shall be subject to, and construed and enforced in accordance with, the laws of the State of Oklahoma.

5. <u>Counterparts</u>. This Assignment Agreement may be executed in counterparts.

[signature page follows]

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment Agreement as of the date first written above.

**ASSIGNOR:**

Springs Global US, Inc., a Delaware corporation

By:_____
    Delbridge E. Narron
    SVP & General Counsel

**ASSIGNEE**:

Shared Investments II, a Delaware limited liability company

By:_____
    Dennis M. Breen, III, Principal

Landlord consents.

**LANDLORD:**

Shared Investments IV, a Delaware limited liability company

By:_____
    Dennis M. Breen, III. Principal